## S. Smith v. Oil City Tube Company, Appellant.

> 183   485
> 20 SC 237

*Negligence—Master and servant—Contributory negligence.*

In an action by a workman against his employer to recover damages for personal injuries caused by falling into a hole in a tube works, the case is for the jury where the evidence for the plaintiff, although contradicted, tended to show that on the day of the accident he was set to work in a place unfamiliar to him ; that, although the place was dangerous, he was given no proper instructions, and that in stepping over certain skids or bars his foot went into a hole, and he was seriously injured.

Argued Oct. 13, 1897. Appeal, No. 72, Oct. T., 1897, by defendant, from judgment of C. P. Venango Co., Jan. T., 1896, No. 54, on verdict for plaintiff. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Trespass for personal injuries. Before CRISWELL, P. J.

At the trial it appeared that the plaintiff was injured on the evening of April 5, 1896, while working in defendant's tube works. He testified that he had been instructed by the fur-

nace and roll boss to handle some pipe in a dangerous place where he had not worked before; that he had not previously done this kind of work; that he had not been properly instructed as to its danger, or as to his work, and that in stepping over certain skids or bars his foot went into a hole or opening, of the existence of which he was ignorant, and that thereby he was seriously injured. There was also evidence on behalf of the plaintiff that the place where the accident occurred was not properly lighted. It also appeared that after the accident the opening or hole was covered by the defendant company.

The court charged in part as follows:

It appears that the plaintiff, on April 5, 1895, was in the employ of the defendant company as a laborer; that on that day he went to work in the evening, shortly after six o'clock; that he was assigned by a Mr. McLaughland to assist in removing pipe, in the manner which has been detailed here by him and by the other witnesses. It also appears, and as to this there is no controversy, that prior to this time he had not been engaged in such work at this mill. It is alleged by the plaintiff that he was put at work there at this time; that he was briefly shown what his duties were, and that he continued there till sometime after nine o'clock when he was injured. It appears that he occupied the position most of the time outside the skids, and so far as the evidence discloses, did not cross any of the skids until the time when he was injured. . . . According to the testimony of Mr. White the skids are from two feet three inches to two feet six inches in height from the floor, as I remember his testimony, and about three feet six inches apart. By keeping in mind these figures it may assist you when you come to determine some of the questions here in controversy, that is, it may enable you to form some idea, a very correct idea, as to what the parties at each side of these skids were required to do in the performance of their duties there.

It appears that about nine o'clock the plaintiff stepped over one of these skids, and his foot went into an opening there, resulting in one foot or leg being suddenly taken off. There is no question but at that place in the floor there was at that time an opening. Different witnesses have described that opening. They don't quite agree as to the size of it. However, it is in

the neighborhood of two feet long and two feet wide, or some-
where along there.   The testimony of the witnesses differ.   You
will remember what they say in reference to it.   As the result
of the injury, which he there received, it appears that he lost
his leg, and this is the injury for which he now seeks to recover.
The plaintiff claims that at the time he was not instructed as to
the danger there was in crossing over the skids; that he had
no knowledge in reference to the matter, or that there was any
danger in going where he did.   He further claims, I believe,
or at least some of the witnesses on the part of the plaintiff do,
that at that time this part of the works was not well lighted;
that while there was an electric light located some twelve feet
above and five feet to one side of this trough, or possibly the
hole, that the light at that time was not lighted, and that he
could not see the hole, and he testifies he did not see it, had no
knowledge of it, did not know the danger, and for that reason
went into the danger.   In addition to his testimony in refer-
ence to this you have the testimony of Raymond Brown.   He
testifies in reference to the existence of the hole, to the fact that
it was known to him, and, as I remember his testimony, that it
could be seen, and testifies that upon that occasion he was within
a short distance from the point where the injury occurred, and
that the light at that time was not burning, that it was dark,
and other matters.   He was examined quite at length, and you
will remember his testimony.   Mr. Olekschak, who, it appears,
was stationed at the front end of these pipes that were being
removed, or at the opposite end from which the plaintiff was
located, was also called.   His business was to catch hold of the
other end of the pipe and pull it away, while the plaintiff and
his helper were to push towards him.   As I remember the testi-
mony of this witness, it was to the effect that in order to push
the pipe clear over it was necessary for the plaintiff to cross the
skids.   His testimony is reference to this, and in reference to
all matters, you will remember, gentlemen.   It is impossible for
us to recall it, and we simply in brief now refer you to the dif-
ferent witnesses.   Jacob Miegas was also called on behalf of
the plaintiff.   He is the witness who testified that he first went
to the plaintiff after his injury and assisted in lifting him over
the trough.   Vincent Markowski was also called on behalf of
the plaintiff, and he testifies that after the injury the hole was

covered by a sheet iron board in some way, and testifies also as
to other matters. Joseph Solomon was called on behalf of the
plaintiff. As I remember this witness's testimony, he was asked
chiefly in reference to matters which he considered incompetent
or irrelevant here, and for that reason did not answer. He is
the gentleman who worked in different mills at other places.
The only other witness called on behalf of the plaintiff was
John Gunshaw. He is the assistant millwright. He was asked
different questions, which also remained unanswered for the same
reason.

On behalf of the defendant, Mr. George H. White was first
called. He has given you the dimensions of these skids, and
has detailed his familiarity with these mills, as to their con-
struction, as to whether or not this mill was in his opinion safe,
or as safe as such mills usually are. Edward McLaughland
was also called and gives you his version as to what occurred
at the time of the employment of the plaintiff. The plaintiff
testified, as we have already stated, that he received no instruc-
tions except briefly to be shown what his duties were, to assist
in removing the pipe. Mr. McLaughland testifies that, in addi-
tion to showing him what his duties were, he instructed him
not to cross the skids at that point, and further that he pointed
out to him the hole in the floor, in which the plaintiff afterwards
was injured. Fred Nubar was also called. He testifies that
he saw Mr. McLaughland at the time he took the plaintiff to
his position there, and saw him instruct him in reference to his
duties, and saw him point out to the plaintiff the hole in the
floor. Mr. Nubar also testifies that after Mr. McLaughland
left, at the instance of Mr. McLaughland, that he went and
talked to the plaintiff and instructed him, and that he also called
his attention to the hole, and instructed him that he should not
cross over the skids. Frank Kabriski was called on behalf of
the defendant, and he testifies that he was employed in the im-
mediate neighborhood of these rolls, and that he saw both Mc-
Laughland and Nubar instructing the plaintiff as to his duties
and informing him about this hole in the floor.

This testimony will probably be considered important by you,
gentlemen, in determining whether or not the plaintiff was
guilty of contributory negligence. When the plaintiff is negli-
gent, it is called contributory negligence. If you determine

from the evidence which has been educed here that the plaintiff was informed of the danger; that the place where the injury occurred was pointed out to him, and that he was instructed not to cross over those skids; if you find that from the evidence you should find that the plaintiff is guilty of contributory negligence; because if he knew the fact it was dangerous to go between those bars, and with knowledge of that danger on his part, and after having been instructed not to do so, he went over, why he is guilty of contributory negligence, and he should not recover in this action. Upon this question you have the testimony, as I remember, of the plaintiff on one side, and these two witnesses on the other, their testimony being corroborated by the third witness, Kabriski. We call your attention to that as being important testimony in the case.

Defendant's points and answers thereto among others were as follows:

1. Under all the evidence the verdict should be for the defendant. *Answer:* Refused. [1]

5. It appearing that plaintiff's place was outside the skid, and therefore safe, and that no one in authority instructed him to go over where he was hurt, there is no evidence of negligence on the part of defendant, and plaintiff cannot recover. *Answer:* Refused. [2]

Verdict and judgment for plaintiff for $1,907.68. Defendant appealed.

*Errors assigned* were (1, 2) above instructions, quoting them.

*J. H. Osmer*, with him *John O. McCalmont* of *McCalmont & McGill*, for appellant.—The law does not require an employer to protect his employees against the possibility of an accident: Iron-ship Building Works v. Nuttall, 119 Pa. 149; Shaffer v. Haish, 110 Pa. 575; Faber v. Carlisle Mfg. Co., 126 Pa. 387; Augerstein v. Jones, 139 Pa. 183; Morse v. Ry. Co., 40 Minn. 465; Hayman v. R. R., 118 Pa. 508; Schultz v. Refining Co., 180 Pa. 272; Zurn v. Tetlow, 134 Pa. 213; Allison Mfg. Co. v. McCormick, 118 Pa. 519; Dooner v. D. & H. Canal Co., 171 Pa. 581; Bellows v. Canal & R. R., 157 Pa. 51; Kehler v. Schwenk, 144 Pa. 348.

Plaintiff should have noticed where he was stepping. His

failure so to do, as well as his leaving his proper position, was contributory negligence on his part: Bemisch v. Roberts, 143 Pa. 1.

*Wm. J. Breene*, with him *Peter A. Wilbert, R. W. Dunn* and *James S. Carmichael*, for appellee.—What is or is not negligence under a given state of circumstances is, as a general proposition, a question peculiarly for the jury: Fisher v. Monongahela Ry., 131 Pa. 292; Bucklin v. Davidson, 155 Pa. 362; Lerch v. Bard, 153 Pa. 573; R. R. v. Jones, 128 Pa. 308; Penna. R. Co. v. Peters, 116 Pa. 206; Neslie v. Pass. Ry., 113 Pa. 300; Baker v. Gas Co., 157 Pa. 593; Pass. Ry. v. Bresmer, 97 Pa. 103.

A positive duty rested upon the appellant company to instruct an inexperienced employee such as Smith, and explain to him the dangers incident to the place and work in which he was engaged: Rummell v. Dilworth, 111 Pa. 343; Bannon v. Lutz, 158 Pa. 166; Wagner v. Jayne Chemical Co., 147 Pa. 475; Kehler v. Schwenk, 151 Pa. 505; Fisher v. Canal Co., 153 Pa. 379; Tagg v. McGeorge, 155 Pa. 368; Ross v. Walker, 139 Pa. 48.

What the appellant company did immediately after the injury by way of covering the hole is a proper matter for the consideration of the jury: McKee v. Bidwell, 74 Pa. 219; R. R. v. McElwee, 67 Pa. 311; R. R. v. Henderson, 51 Pa. 315; Water Co. v. Stewartson, 96 Pa. 436.

OPINION BY MR. CHIEF JUSTICE STERRETT, Jan. 3, 1898:

After a careful review of all the testimony we are satisfied that material questions of fact for the determination of the jury are presented therein, and hence it was the duty of the court to submit the case to them with proper instructions. There is not a single complaint as to the charge, or any of the learned judge's instructions, except his refusals to give the binding instructions requested in defendant's first and fifth points for charge; and these constitute the only assignments of error in this case. In the first of these he was asked to say, " That under all the evidence the verdict should be for the defendant," and in the other, "It appearing that the plaintiff's place was outside the skid, and therefore safe, and that no one in authority instructed him to go over where he was hurt, there is no evidence of negligence on the part of the defendant, and plaintiff cannot recover."

As to the facts of which each of these points is predicated, the testimony was more or less conflicting, and it would have been error to have withdrawn the case from the jury by affirming either of them. It was conceded that plaintiff was not a trespasser, but "a workman properly in the place in which he was working," and also "that the place in question was dangerous." As to the degree of danger, to what extent it was patent, and whether the plaintiff was properly instructed and warned of its existence and dangerous character or not, the testimony was conflicting, and therefore for the jury.

In affirming defendant's second, third, fourth, sixth and seventh points the court, in defendant's own words, very guardedly instructed the jury that if they found "from all the evidence that the skids were so constructed that plaintiff could not be injured without leaving the place where he was put to work, and stepping over the skid into the hole, and that such skids and machinery were safe when used with ordinary care, that is all that the law required and the verdict should be for the defendant.

"If there was a hole beyond the first skid into which one might have stepped by climbing over the skid, that cannot be imputed as negligence on the part of the defendant, unless the jury find that plaintiff's place was over there, or that some one in authority instructed him to go there.

"That the subsequent covering of the hole is not, of itself, evidence of negligence.

"If the hole was visible or the plaintiff was properly instructed as to his duties and warned not to step over the skid, it was his duty to recognize the danger of such a step. His failure to do so would be at his own risk and would constitute such contributory negligence as will prevent any recovery in this case.

"That the plaintiff was under no compulsion to enter upon the employment in which he was engaged at the time of his injury; that in undertaking the service required of him, he is presumed to have considered himself competent to perform such service, and if, from the situation, location and character of the machinery, it were visibly dangerous, or if by his exercise of ordinary and prudent care or inquiry the plaintiff would have discovered the place where he was injured, he was bound to

observe care under the circumstances, and having omitted such care, the plaintiff was guilty of negligence, and cannot recover."

Viewing the verdict in the light of these instructions given at defendant's request, it is very evident that in determining the disputed questions of fact the jury must have found in accordance with the plaintiff's, and not the defendant's theory of the controlling facts.

' There appears to be nothing in the record that requires further elaboration. Both specifications of error are overruled, and the judgment is affirmed.